No. 14-14581-AA

# In the United States Court of Appeals
# For the Eleventh Circuit

Star Discount Pharmacy, Inc., Propst Discount Drugs, Inc.,
C&H Pharmacy, Inc., Darden Heritage

*Plaintiffs – Appellants*

v.

MedImpact Healthcare Systems, Inc., Michael Struhs,
Nicole Adams

*Defendants – Appellees*

On Appeal from the Northern District
of Alabama Northeastern Division
No. 5:11-cv-02206-AKK

**BRIEF FOR AMICI CURIAE
CENTER FOR MEDICINE IN THE PUBLIC INTEREST
AND CONSUMER ACTION IN SUPPORT
OF APPELLANTS AND REVERSAL**

Richard P. Rouco
Quinn, Connor, Weaver
Davies & Rouco, LLP
2700 Highway 280
Birmingham, AL
(205) 870-9989

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, 11th Cir. R. 26.1-2, and 11th Cir. R. 26.1-3, Amici Curiae, the Center for Medicine in the Public Interest and Consumer Action, certify that the following person or entities are known to have an interest in the outcome of this appeal:

The Center for Medicine in the Public Interest

Consumer Action

Richard P. Rouco (Counsel to Amici Curiae)

Quinn, Connor, Weaver, Davies & Rouco, LLP

Pursuant to 11th Cir. R. 26.1-1, the Counsel for the Center for Medicine in the Public Interest and Consumer Action certify that they believe the Certificate of Interested Persons contained in Appellants' Brief is (with the exception of the names and entities noted above) complete.

Pursuant to Fed. R. App. P. 26.1, the Center for Medicine in the Public Interest and Consumer Action state that they are not corporate entities and they do not issue stock.

## TABLE OF CONTENTS

INTEREST OF AMICI CURIAE ..................................................................................1

STATEMENT OF THE ISSUES..................................................................................2

SUMMARY OF THE ARGUMENT ...........................................................................3

ARGUMENT ...................................................................................................................4

    Pharmacy Choice and Access is Vital to Consumers.............................................4

    Any Willing Provider Laws Are Enacted to Protect Competition and Vital Access for Consumers ..................................................................................................8

CONCLUSION ..............................................................................................................12

CERTIFICATE OF COMPLIANCE.........................................................................144

CERTIFICATE OF SERVICE .....................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*North Jackson Pharmacy Inc. vs. Caremark Rx, Inc*. 385 F. Supp. 2d 740, 749 (N.D. Ill. 2005) ..................................................................................................11

**Statutes**

Ala. Code § 27-45-3...................................................................................................9

**Other Authorities**

U.S. Dept. of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines*, at 1 (Aug. 19, 2010)..................................................................................................7

**References**

Andrew P. Traynor et al., *The Main Street Pharmacy: Becoming an Endangered Species*, 2 RURAL MINN. J. 83, 85 (2007)...............................................................11

Any Willing Provider Laws, PBMWATCH.COM......................................................8

David Balto and James Kovacs, *Increasing Competition and Choice*, New America Foundation (March 2014)...................................................................................9

Kevin Schweers, "Patient Survey Finds More Good News for Independent Community Pharmacies," July 15, 2013 ..............................................................5

Mark Lowery, Pharmacists Among the Most Trusted Profession, Drug Topics (December 19, 2013) ...........................................................................................5

*Medication Adherence in America: A National Report Card,* at 3-4 (NCPA/Langer Research Associates 2013) .......................................................................................6

National Conference of State Legislatures, State Roles in Health Reform Provisions Related to Insurance (October 2011).....................................................8

# INTEREST OF AMICI CURIAE[1]

Amicus curiae Center for Medicine in the Public Interest ("CMPI") is a nonprofit, non-partisan organization promoting innovative solutions that advance medical progress, reduce health disparities, extend life and make health care more affordable, preventive and patient-centered. CMPI also provides the public, policymakers and the media a reliable source of independent scientific analysis on issues ranging from personalized medicine, food and drug safety, health care reform and comparative effectiveness.

Amicus curiae Consumer Action is a national non-profit organization that has worked to advance consumer literacy and protect consumer rights in many areas, including healthcare for over forty years. The organization achieves its mission through several channels, from direct consumer education to issue-focused advocacy.

Amici believe that the issues raised in this case, in particular, the importance of "Any Willing Provider" statutes touch on matters central to their missions. CMPI has studied the impact of "Any Willing Provider" statutes and views them as one important tool for protecting access to quality health care, especially in underserved communities, and for promoting competition, which ultimately

---

[1] Under Rule 29(c)(5) of the Federal Rules of Appellate Procedure, amici certify that no party to this action authored this brief in whole or in part; no party or party's counsel contributed money to fund preparing or submitting this brief; and no person other than amici curiae contributed money that was intended to fund preparing or submitting this brief.

benefits patients and consumers of health care. Consumer Action has a great interest in ensuring fair and reasonable access to consumers' health care provider of choice. To the extent this case involves an issue of the applicability of Alabama's "Any Willing Provider" statute, amici believe that their analysis of the impact and importance of such statutes may assist the Court in resolving the issue raised on this appeal.

## STATEMENT OF THE ISSUES

1. Did the district court err in entering summary judgment against Appellants because it found that Appellants failed to demonstrate that Appellees' conduct harmed competition among pharmacies within the State of Alabama?

   a. Did the record contain sufficient evidence to demonstrate harm to competition?

   b. Did the district court fail to consider non-price harm to competition?

   c. Did the district court err in relying upon a single statement from a deposition transcript of a lay witness to find Appellants failed to demonstrate harm to competition?

2. Did the district court abuse its discretion in excluding Appellants' expert economist's report?

## SUMMARY OF THE ARGUMENT

Local and independently owned community pharmacies provide valuable services to consumers residing in sparsely populated areas. Consumers rely on community pharmacies to fill their prescriptions and provide needed healthcare services. The community pharmacist is often the first line of health care for consumers, particularly in locales in which access to primary care is limited. These pharmacies provide vital services often not found at their chain and mail order counterparts, including one-on-one counseling, nutritional guidance, high quality service, opportunities to promote generic drugs and other lower-cost medication alternatives. Moreover, community pharmacists get to know their patients and are well-positioned to know of patients' health and medication profile to catch dangerous drug interactions and promote medication adherence.

Competition among community pharmacies benefits consumers through lower prices, higher quality and better services. Because most consumers of pharmacy services participate in an insurance plan, these consumers must have the ability to select a provider in order to foster competition. It is for these reasons that numerous state legislatures across the country have enacted "any willing provider" statutes. An "any willing provider" statute allows consumers to make their own provider decisions, while retaining the benefits of participating in an insurance plan. The "any willing provider" statute also ensures that consumers have access

3

to "out of network" providers, without having to bear the full cost of accessing such providers. However, pharmacies cannot compete on a level playing field when reimbursement for prescription services is cut so low that it requires pharmacies to operate below the level it costs to service patients.

The case on appeal raises a substantial factual question of whether the Appellee MedImpact harmed consumers and competition in a relevant market by exercising monopsony power in a manner inconsistent with the Alabama's "any willing provider" statute. The Court should remand the case for a determination of whether MedImpact's contracting practices and exclusion of "out of network" providers effectively excluded community pharmacies from its pharmacy network and whether such exclusion harmed consumer welfare and competition.

## ARGUMENT

### I.   Pharmacy Choice and Access is Vital to Consumers

Over 220 million Americans receive pharmacy benefits through a private or employer-sponsored pharmacy benefits plan administered by a third party pharmacy benefit manager (PBM). The widespread use of PBM services has concentrated and substantially enhanced the market of power of third party PBMs, such the Appellee MedImpact. As frequently the dominant buyer in a market for pharmacy services, a PBM can wield this power to substantially exclude from the relevant market community pharmacies unwillingly to accept what are oftentimes

onerous conditions. The community pharmacies that agree to participate in a dominant PBM's network must sacrifice the vital pharmacy services (e.g. individualized counseling) that consumers rely upon because these services are simply not reimbursed or reimbursed at below cost. Instead, community pharmacies are forced to become little more than outlets to fill and distribute prescriptions.

The lack of reimbursement for pharmacy services unquestionably harms consumer welfare. Consumers in Alabama and across the country alike, depend on independent community pharmacies for needed healthcare services. Surveys consistently demonstrate that consumers substantially value their relationship with their community pharmacist. Community pharmacists are the most trusted and most accessible health care professionals, especially in underserved rural and inner city markets.[2]

Community pharmacies tend to have significantly more pharmacist/customer interactions than other pharmacy types, including large chain pharmacies and mail order pharmacies.[3] Such interactions are vitally important because effective healthcare depends on personal relationships and trust. If the customer knows and

---

[2] See Mark Lowery, Pharmacists Among the Most Trusted Profession, Drug Topics (December 19, 2013).

[3] Kevin Schweers, "Patient Survey Finds More Good News for Independent Community Pharmacies," July 15, 2013 (summarizing results of survey conducted by Boehringer Ingelheim Pharmacy Satisfaction Pulse), available at http://ncpanet.wordpress.com. (Study available at http://www.pharmacy satisfaction.com/pharmacy-data.jsp).

5

trust his or her pharmacist, then the pharmacist can more effectively explain and promote generic drugs and other lower-cost medication alternatives. Additionally, a pharmacist's personal knowledge of the customer's health and medication profile facilitates identification of potentially dangerous drug interactions, and helps prevent the medical complications and staggering costs associated with "medication non-adherence" (i.e. patient failure to take medications or refill them as prescribed.) Non-adherence is estimated to cost our healthcare system over $290 billion annually in avoidable care such as trips to the emergency room, and hospital stays. The most significant factor promoting adherence is patients' *personal connection* with a pharmacist or pharmacy staff.[4]

Independent community pharmacies are known for adapting their services to the needs of the particular communities they live in and serve, with an emphasis on flexibility, trust, and personal service. They deliver medications to customers who cannot make it into the store. They open early and stay late when their customers have an urgent need. They offer charge accounts, an essential service during the economic decline of the last several years. And they are willing to do what is known as "traditional compounding," which means customizing medications for patients who cannot easily take them in their off-the-shelf formulations, for

---

[4] *Medication Adherence in America: A National Report Card,* at 3-4 (NCPA/Langer Research Associates 2013), available at https://www.ncpanet.org/index.php/report-card.

example, by flavoring the medication or putting it in liquid form so that it can be given to a child.

The effect of a challenged practice or restraint on *non-price competition* is a well-established metric for determining whether such practice or restraint harms consumer welfare and competition.[5]  Non-price competition includes competition on dimensions like quality, innovation, and service.  Historically, small and local businesses often compete vigorously on non-price factors, putting pressure on their larger rivals to compete in these areas as well as on price.  Consumers are the ultimate beneficiaries of such competition.  Consumers are harmed, however, when small businesses are forced out of the relevant market because it lessens the competitive pressure that forced their larger rivals to innovate or provide great service as well as low prices.

This case is ultimately about protecting access to high-level health care for consumers, which community pharmacies do best.  Consumers suffer when a dominant PBM adopts practices or restraints that effectively eliminate non-price competition.  Community pharmacies are either shuttered or they substantially scale back the provision of individualized services when a PBM conditions access

---

[5] For instance, the federal antitrust agencies review proposed mergers, not only by evaluating the likely ability of the merged entity to raise prices, but also their ability to harm consumers with "non-price terms and conditions" such as "reduced product variety, reduced service, or diminished innovation." U.S. Dept. of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines*, at 1 (Aug. 19, 2010), available at http://www.justice.gov/atr/public/guidelines/hmg-2010.pdf.

7

to a substantial number of customers on network participation and acceptance of below cost reimbursement rates.

As detailed above, community pharmacies provide important benefits to healthcare consumers that larger market participants often do not.  Appellee's conduct has forced a decline in community pharmacy quality and business in the local market.  This conduct affects not only the Appellants' innovated and high-quality pharmacies, but other community pharmacies as well.  Their decline in the marketplace means the loss of significant competitive pressure on their larger rivals.

## II. Any Willing Provider Laws Are Enacted to Protect Competition and Vital Access for Consumers

Alabama is one of over twenty states that enacted any willing provider laws.[6]  Any willing provider ("AWP") laws are primarily designed to allow consumers to choose their health care provider.  For example, in 2011 the State of North Dakota adopted an "any willing provider" statute that aims at protecting consumer freedom of choice in the selection of health care providers.[7]  Among other things, the statute prohibits an insurance plan from imposing conditions on the use of a non-participating provider that it does not impose on other

---

[6] See Any Willing Provider Laws, PBMWATCH.COM, http://www.pbmwatch.com/any-willing-provider-laws.html (last visited December 2014).
[7] National Conference of State Legislatures, State Roles in Health Reform Provisions Related to Insurance (October 2011); available at http://www.ncsl.org/research/health/state-roles-in-health-reform-provisions-related-to.aspx.

8

beneficiaries that use a participating provider, as long as the provider is willing to accept the reimbursement rates offered to network providers.  While most states do not have identical language in their AWP laws, the intent of the statues are the same – to protect consumer choice, competition between pharmacies and access for all beneficiaries.[8]

With respect to Alabama, the AWP law stipulates that 1) any beneficiary of a health plan contract in Alabama shall have the right to select "the pharmacy or pharmacists of his choice," and 2) any pharmacy or pharmacist licensed to provide pharmacy services has the right to participate as a contract provider.[9]  However, the consumer's right to select a pharmacist is illusory if the reimbursement rate for pharmacy services is set at below-cost.  Setting the reimbursement rate of pharmacy services at below cost can have the effect of excluding competitors in violation of the law.

Of particular concern is the district court's finding that Appellee refused to directly reimburse consumers for purchases made at a "non-participating" pharmacy (even if the amount reimbursed is at the discounted network rate). 2014 WL 4470720 at *3, fn. 3.  Arguably, the denial of direct reimbursement violates Alabama's "any willing provider" statute; in any event, such conduct supports the

---

[8] David Balto and James Kovacs, *Increasing Competition and Choice*, New America Foundation, at 3 (March 2014).
[9] Ala. Code § 27-45-3

contention that Appellee imposed an exclusivity requirement to the detriment of consumer choice and competition. Even if a consumer elected to accept less than full reimbursement for his or her purchase from a non-participating community pharmacy, the Appellee refused the reimbursement request in apparent effort to force the non-participating pharmacy into its network or lose access to all Appellee's subscribers (or covered beneficiaries). The overriding of consumer preferences for the personalized services of a community pharmacy (preferences clearly revealed by the willingness to bear some of the costs associated with patronizing a non-participating community pharmacy) shows that the exclusive dealing practices at issue in this case harm consumer welfare and diminish competition. Competition is diminished because participating pharmacies are insulated from non-price competition with non-participating pharmacies.

With increasingly limited options from which to purchase pharmaceuticals, consumer welfare suffers, particularly in underserved, rural areas when community pharmacies can no longer provide additional services because PBMs refuse to reimburse for such services. Consumers rely on their local pharmacies for more than just pharmaceuticals. Pharmacists at independent, local pharmacies are trained to help educate patients, monitor their medications, aid in the event of an

adverse reaction, and provide quality assurance.[10] Without these much needed services, vulnerable consumers might go without necessary medical care. Furthermore, if a consumer seeks out a new provider of services, they are unlikely to find one. Many of these community pharmacies operate in rural or underserved areas and act as the sole provider of pharmaceuticals and like-services for their communities. 91 percent of community pharmacies are located in rural areas, 22 percent of which are consumers' sole pharmacy available within a twenty mile radius.[11] Many consumers have complained of being forced to leave the pharmacies they have used for years, often where they go for the first line of health care, and where they have built trusting relationships with their community pharmacist.

MedImpact's ability to achieve market control through violation of the Alabama Any Willing Provider statute diminished price, service, and quality competition. Courts recognize that consumer harm may result from granting or enlarging monopsony power. *See, e.g. North Jackson Pharmacy Inc. vs. Caremark Rx, Inc*. 385 F. Supp. 2d 740, 749 (N.D. Ill. 2005) (explaining "The exercise of

---

[10] Andrew P. Traynor et al., *The Main Street Pharmacy: Becoming an Endangered Species*, 2 RURAL MINN. J. 83, 85 (2007); *see also* Todd, *supra* note 38 (rural pharmacists also "provide a range of clinical services, including blood pressure checks; diabetes counseling and blood glucose testing; immunizations; educational classes; screening tests for osteoporosis, asthma, hearing, and cholesterol; and tobacco cessation programs").

[11] *See* Andrew D. Radford & Michelle Lampman, *A Profile of Sole Community Pharmacists: Their Role in Maintaining Access to Medications & Pharmacy Services in Rural Communities*, MEDICATION USE IN RURAL AMERICA CONFERENCE (2009).

[monopsony] power causes competitive harm because the monopsonist or the group will shift some purchases to a less efficient source, supply too little output to the downstream market, or do both."). This result was achieved by MedImpact's conduct leading to the exclusion of numerous retail community pharmacies from PEEHIP's network, and therefore significantly limiting patient choice.

When dominant firms engage in such exclusionary behavior, including significantly lowering reimbursement to retail community pharmacies to the point in which it is difficult for these high-value health care providers to survive and/or provide consumers with needed services, the result is harmful to consumers. Violation of the AWP laws usurps consumers' rights to vital access of the provider of their choice and limits valuable services otherwise available to consumers.

## CONCLUSION

Consumer welfare and choice are the touchstone of competition laws. The history and experience with community pharmacies (who compete on high quality services to consumers) demonstrates the importance of non-price factors in the delivery of health care services. However, when a third party PBM circumvents state laws aimed at protecting competition and consumer choice in the pharmacy services market, the loss of such services is substantially harmful. MedImpact exercised its market power to the detriment of consumers by imposing an exclusivity requirement that contravenes Alabama's AWP statute. The exercise of

12

market power arguably in violation of a state consumer protection law raises a genuine issue of material fact on whether Appellee's conduct violated state antitrust laws. Because of the substantial consumer harm resulting from MedImpact's conduct, Amici support Appellants reversal of the district court's grant of summary judgment.

Dated: January 8, 2015

                                      Respectfully submitted,

                                      /s/ *Richard P. Rouco*
                                      Richard P. Rouco
                                      *Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitation by the word count of the word processing system used to prepare the brief.  This brief contains 3295 words, including the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

Dated: January 8, 2015

>                /s/ *Richard P. Rouco*
>                Richard P. Rouco
>                *Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2015, a true and correct copy of the foregoing Brief for *Amici Curiae* was filed in accordance with the Court's CM/ECF Guidelines and served via the Court's CM/ECF system on all counsel of record.

/s/ *Richard P. Rouco*
Richard P. Rouco
*Counsel for Amici Curiae*